UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES SURETY COMPANY
and PAUL HOWARD CONSTRUCTION
COMPANY,

      Plaintiffs,

v.                  Case No. 8:13-cv-1207-T-33TGW

JOSEPH EDGAR and GLOBAL EGG
CORP.,

      Defendants.
_____/

## ORDER

This matter comes before the Court in consideration of Defendants Joseph Edgar and Global Egg Corp.'s Motion to Compel Arbitration and Stay Proceedings (Doc. # 49) filed on October 23, 2013. Plaintiffs United States Surety Company (USSC), United States Specialty Insurance Company (USSIC), and Paul Howard Construction Company (PHCC) filed a response in opposition to the Motion on November 6, 2013. (Doc. # 50). Also before the Court is Edgar's Motion to Dismiss Claims Against Defendant Joseph Edgar, Individually (Doc. # 48), filed on October 23, 2013. All Plaintiffs filed a response in opposition to the Motion to Dismiss on November 6, 2013. (Doc. # 51).

For the reasons that follow, the Court grants the Motion to Compel Arbitration and Stay Proceedings to the extent that Counts IV and V of the Second Amended Complaint are compelled to arbitration.  The Motion is otherwise denied.  Furthermore, the Court denies the Motion to Dismiss Claims Against Defendant Joseph Edgar.

I.   **Background**[1]

USSIC is a surety company that issues performance and payment bonds for public and private projects.  (Doc. # 42 at 2).  USSC "is a sister company to [USSIC]" that, in addition to issuing performance and payment bonds for public and private projects, "administers claims made against USSIC bonds." (Id.).  PHCC is a "marine and dredging construction" company. (Id.).  Global is a dissolved New York corporation and former contractor specializing in dredging activities. (Id.).  Joseph Edgar is an individual who formerly served as the president of Global.  (Id.).

---

[1]  The Court derives these facts from the Second Amended Complaint.  (Doc. # 42).  "For purposes of determining the issue of arbitration, the Court assumes that the facts alleged are true." Northbrook Indem. Co. v. First Auto. Serv. Corp, N.M., No. 3:07-cv-683-J-32JRK, 2008 WL 3009899, at *1 n.2 (M.D. Fla. Aug. 1, 2008) (citing Int'l Underwriters AG v. Triple I: Int'l Inv., Inc., 533 F.3d 1342, 1345-46 (11th Cir. 2008)).

In 2008, the Jacksonville District of the U.S. Army Corps of Engineers issued plans for the construction of an aquatic ecosystem restoration project (the Project) in Clearwater, Florida, which required substantial dredging. (Id. at 3). On August 17, 2009, the Corps awarded the contract for completion of the Project work to non-party SEEK Enterprises. (Id.). SEEK subsequently failed to timely perform its obligations under the contract, and the Corps consequently terminated SEEK for default in February of 2011. (Id.).

Following SEEK's termination, PHCC took over completion of the Project for the Corps; to do so, PHCC obtained a performance bond for the Project from USSC in the penal amount of $4,210,972.00. (Id.). In March of 2011, PHCC entered into an agreement with Global (the Global Agreement) for the performance of the work required to complete the Project. (Id.).

In accordance with the Global Agreement, Global agreed to provide equipment and manpower to perform dredging and other work required for the Project. (Id. at 4). The Global Agreement additionally contained an Arbitration Clause which provided, in relevant part:

> All claims, disputes and other matters in question between GLOBAL EGG and HOWARD arising out of, or relating to, this Agreement or the breach thereof

3

> . . . shall be decided by arbitration in accordance
> with the Arbitration Rules of the American
> Arbitration Association then pertaining unless the
> parties mutually agree otherwise.

(Doc. # 42-1 at 2).

In August of 2011, PHCC and Global entered into a Purchase Order Agreement which required Global to furnish equipment to the Project site in exchange for payments from PHCC totaling $1,050,000.00. (Doc. # 42 at 4). This equipment specifically included a dredge, fuel barge, boats, boosters, and transfer pumps, among other items. (Id.).

During the course of the work on the Project site, Global fell behind on payments owed to its equipment vendor pursuant to a "rental/purchase agreement" for the dredge and related equipment (id.), and the vendor brought a replevin action against Global in federal court seeking return of the dredge. See Southwest Cattle Co., LLC v. Global Egg Corp., Case No. 8:12-cv-803-T35TGW. On June 28, 2012, Global advised the court in its dispute with the equipment vendor that its corporate charter had lapsed, but Global "represented that it was in the process of reinstating its corporate status with the state of New York." (Doc. # 42 at 4).

In the summer of 2012, the Corps issued (1) a stop work order for the Project and (2) a default notice to PHCC. (Id.

at 5). Based on its perception that PHCC and Global had failed to make sufficient dredging progress, the Corps threatened PHCC with termination. (Id.). Shortly thereafter, on August 23, 2012, Global notified PHCC that it considered PHCC in breach of the Global Agreement due to PHCC's alleged failure to make certain payments required by the Purchase Order Agreement. (Id.). Global notified PHCC that, as a result, Global intended to terminate the Global Agreement. (Id.). In the alternative, Global stated that it would continue working on the Project under the contract, provided it had use of the dredge or a suitable substitute, in order to give PHCC an opportunity to cure the alleged contract breaches. (Id.). Global additionally asserted a claim against PHCC's payment bond for the allegedly unpaid amounts due. (Id.).

In an effort to avoid an interruption in work on the Project that would likely result in termination of PHCC's contract with the Corps, USSC contacted Global on USSIC's behalf in August of 2012 in an effort to settle Global's disputes with PHCC and with Global's equipment vendor. (Id. at 6). On August 27, 2012, USSC and Global entered into a Settlement Agreement concerning Global's dispute with PHCC, pursuant to which USSC agreed to provide a total of

$500,000.00 in funds through USSIC for or on behalf of Global. (Id.). The Settlement Agreement further provided for a direct payment of $267,917.00 to Global as well as a payment of over $150,000.00 to Global's equipment vendor for the purchase of a dredge and other related equipment. (Id.). Defendant Joseph Edgar executed the Settlement Agreement as "president" of Global. (Id.).

Despite these settlement efforts, the Corps terminated PHCC's contract for the Project on November 2, 2012, allegedly due to Global's failure to make sufficient progress. (Id. at 7). On November 7, 2012, the Corps notified USSC that it would look to the surety for completion of the work, including costs of re-procurement and the assessment of liquidated damages. (Id.). The Corps also advised USSC that it should take responsive action to fulfill its obligations under the performance bond. (Id. at 7-8).

In response to the notice from the Corps, USSC began "devising plans for the takeover and performance of the remaining work." (Id. at 8). On November 9, 2012, "Edgar and Global expressed dissatisfaction with the options USSC was considering to complete the remaining Project work." (Id.). As a result, Edgar "notified USSC that he intended to 'be in Florida early next week to secure [his] equipment,'"

and additionally wished USSC "the best of luck" regarding the remaining Project work. (Id.). USSC claims that, subsequent to this notification, Global began disconnecting equipment at the Project site, which led USSC to believe that Global intended to remove its equipment in violation of the Settlement Agreement. (Id. at 8-9).

Acting on this assumption, USSC initiated a separate federal action, United States Surety Company v. Global Egg Corp., Case No. 8:12-cv-2574-T-33EAJ, obtained a temporary restraining order, and attempted to obtain a preliminary injunction against Global. (Id. at 9). Global maintained, however, that it had no intention of moving the equipment off site. (Id.). In November of 2012, during the course of that litigation, USSC discovered that Global had been dissolved as a corporation by the state of New York due to "repeated violations of New York Tax Law § 203-a." (Id.; Doc. # 42-14 at 1). Global subsequently confirmed in response to USSC's motion for preliminary injunction that in April of 2012, "the New York State Corporations Department dissolved Global Egg by proclamation for back taxes." (Doc. # 42-11 at 11 n.6). On January 2, 2013, Magistrate Judge Elizabeth A. Jenkins issued a report and recommendation recommending that USSC's

motion for preliminary injunction be denied. (Doc. # 42 at 10).

USSC and PHCC assert that, "[w]ithin days of the issuance of this Court's Report and Recommendation, and without USSC's knowledge or consent, Edgar and others returned to the secure Project site and removed several pieces of equipment," and that "Global's removal efforts increased significantly on or about January 12, 2013, when Edgar and others removed the dredge and other equipment from the Project site, again, without USSC's knowledge or consent." (Doc. # 42 at 10).

On January 15, 2013, allegedly "unaware of Edgar's efforts to remove equipment from the Project site, USSC informed Global that it considered the August 27, 2012, Settlement Agreement to be 'void and rescinded' based upon Global's misrepresentations and omissions of fact as to Global's corporate status." (Id.). USSC also advised Global that it considered "all dredging equipment and machinery purchased as part of the S.W. Cattle sale . . . to be USSC's property." (Id. at 11; Doc. # 42-14 at 1).

On January 17, 2013, USSC discovered that Edgar had removed the dredge and other equipment from the Project site. (Doc. # 42 at 11). Accordingly, on January 18, 2013, USSC made a written civil theft demand on Global and Edgar under

8

section 772.11(1), Florida Statutes, "for the treble damage amount of $471,000 due to Global's and Edgar's removal of the dredge and related equipment items purchased from S.W. Cattle." (Id.; Doc. # 42-15 at 1).

Plaintiffs claim that, as of May 2, 2013, neither Global nor Edgar has responded to USSC's civil theft demand letter. (Doc. # 42 at 11). Additionally, USSC and PHCC claim that Global and Edgar have "failed to pay certain vendors for equipment rentals used in conjunction with the Project, thereby resulting in claims against USSC's payment bond." (Id.).

## II. **Procedural History**

USSC and PHCC initiated this action against Edgar and Global on May 7, 2013, by filing an eight-count Complaint. (Doc. # 1). Specifically, the Complaint alleged counts of (1) fraud in the inducement (against Edgar); (2) negligent misrepresentation (against Edgar); (3) rescission (against Edgar and Global); (4) breach of contract (against Global); (5) indemnity (against Global); (6) personal liability (against Edgar); (7) civil theft (against Edgar and Global); and (8) conversion (against Edgar). Rather than asserting each claim on behalf of both Plaintiffs, the Complaint

specified that PHCC independently asserted Counts IV and V, whereas USSC independently asserted the remaining six counts.

On August 21, 2013, USSC and PHCC filed an Amended Complaint in response to a Court Order concerning defective jurisdictional allegations. (Doc. # 29). The Amended Complaint contained the same eight counts as the original Complaint.

On October 9, 2013, with leave of Court, USSC and PHCC filed a Second Amended Complaint. (Doc. # 42). Although the Second Amended Complaint also contains the same eight counts as the original complaint, it includes an additional Plaintiff: United States Specialty Insurance Company. (Id.). Furthermore, the Second Amended Complaint reflects that USSC and USSIC jointly assert Counts I, II, III, and VI, PHCC independently asserts Counts IV and V, and USSC alone asserts Counts VII and VIII.

On October 23, 2013, Edgar filed his Motion to Dismiss Claims against Defendant Joseph Edgar, Individually. (Doc. # 48). On that same date, Global joined Edgar in filing the present Motion to Compel Arbitration and Stay Proceedings. (Doc. # 49). The Court has carefully reviewed the Second Amended Complaint, the Motions, and the responses, and is otherwise fully advised in the premises.

### III. **Motion to Compel Arbitration**

"The validity of an arbitration agreement is generally governed by the Federal Arbitration Act." Lambert v. Austin Indus., 544 F.3d 1192, 1195 (11th Cir. 2008) (internal quotation omitted).   The FAA "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2).

"Accordingly, the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of that agreement." Lambert, 544 F.3d at 1195.   Thus, in resolving the instant Motion to Compel Arbitration, the Court must determine whether the relevant Arbitration Clause is an enforceable contract under Florida law and, if so, whether the claims asserted in the Second Amended Complaint fall within its scope.

### A.    **Arbitrability**

As a preliminary matter, all three Plaintiffs "concede that two of the eight affirmative counts in their Second Amended Complaint (Counts IV and V by Plaintiff PHCC) are arbitrable . . . ." (Doc. # 50 at 2). Thus, the Court grants Defendants' Motion to Compel Arbitration as to Counts IV and V of the Second Amended Complaint. The Court will proceed to analyze the arbitrability of the remaining six counts.

### 1. Non-Signatory Party

In response to the Motion to Compel Arbitration, Plaintiffs do not dispute that the Arbitration Clause contained in the Global Agreement between PHCC and Global is enforceable as to those two parties under ordinary state-law contract principles. However, Plaintiffs dispute the Arbitration Clause's enforceability as to USSC and USSIC in light of their status as non-signatories to the Global Agreement.

Importantly, "[u]nder federal law, arbitration is a matter of consent, not coercion." World Rentals and Sales, LLC v. Volvo Constr. Equip. Rents, Inc., 517 F.3d 1240, 1244 (11th Cir. 2008) (internal quotation omitted). "Accordingly, a party ordinarily will not be compelled to arbitrate unless that party has entered into an agreement to do so." Id. (internal quotation omitted). However, the Eleventh Circuit

has recognized that "common principles of contract and agency law allow a signatory . . . to bind a non-signatory . . . to an arbitration agreement under any of five distinct theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel." Id. (internal quotations omitted).

In their Motion to Compel Arbitration, Global and Edgar do not directly argue that any one of these theories applies in the instant case; indeed, the Motion neglects to acknowledge the status of USSC and USSIC as non-signatories whatsoever. However, the Motion to Compel Arbitration states: "The 'Settlement Agreement' references issues referenced in the August 23, 2012[,] termination notice, and . . . [t]hat termination notice expressly references the original Global Agreement cited by the plaintiff[s] in [the] complaint . . . ." (Doc. # 49 at 2). To the extent Global and Edgar rely on this statement to argue that the incorporation by reference doctrine applies in the instant case, the Court disagrees.

"A document may be incorporated by reference in a contract if the contract specifically describes the document and expresses the parties' intent to be bound by its terms." Salco Distribs., LLC v. iCode, Inc., No. 8:05-cv-642-T-27TGW,

2006 WL 449156, at *3 (M.D. Fla. Feb. 22, 2006) (quoting Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc., 743 So. 2d 627, 631 (Fla. 1st DCA 1999)).  Under this test, the Settlement Agreement fails to incorporate by reference the Global Agreement containing the relevant Arbitration Clause; Global and Edgar do not argue otherwise.

Rather, instead of asserting that USSC and USSIC are bound to arbitrate their claims under any of the five theories listed above, Global and Edgar argue that "the arbitration provision in . . . the Global Agreement between the parties uses broad language with *any claim or disputes*," and thus that this language should require arbitration of all contract and tort claims in this case.  (Doc. # 49 at 5) (emphasis in original).  However, the Court is mindful that "broad arbitration clauses cannot be extended to compel parties to arbitrate disputes they have not agreed to arbitrate." Klay v. All Defendants, 389 F.3d 1191, 1195 (11th Cir. 2004). Accordingly, finding that Global and Edgar have failed to demonstrate the application of any of the five distinct theories that may bind a non-signatory to an arbitration agreement, the Court denies Global and Edgar's Motion to Compel Arbitration as to the claims asserted by USSC and USSIC.

## 2.   Scope of the Arbitration Clause

Furthermore, even if the Court had found the Arbitration Clause enforceable as to USSC or USSIC under one of the five theories listed above, the Court nonetheless concludes that USSC and USSIC's dispute with Global and Edgar falls outside the scope of the Arbitration Clause.   "To determine what disputes the parties agreed to arbitrate, we begin, as we must, with the language of the applicable arbitration provision, keeping in mind that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." World Rentals, 517 F.3d at 1245.  In this case, the Arbitration Clause is contained in the Global Agreement between PHCC and Global.  (Doc. # 42-1 at 2).  The Arbitration Clause specifies that "[a]ll claims, disputes and other matters in question between GLOBAL EGG and HOWARD arising out of, or relating to, this Agreement or the breach thereof, and except for claims which have been waived by the making or acceptance of final payment shall be decided by arbitration . . . ." (Id.).

Thus, the Arbitration Clause unambiguously limits its reach only to disputes between Global and PHCC.  See World Rentals, 517 F.3d at 1246.  In World Rentals and Sales, LLC v. Volvo Construction Equipment Rents, Inc., the Eleventh

Circuit came to a similar conclusion in a case involving an arbitration clause applying to "all disputes . . . arising between Franchisee and Franchisor," where "Franchisor" was defined as "[only] Volvo Construction Equipment Rents, Inc. and not Franchisor's parents or affiliates." Id.  In that case, the court determined that the arbitration provision was "expressly limited to the immediate parties," and thus that the district court correctly refused to employ an incorporation-by-reference theory to compel arbitration against an affiliate of an immediate party.  Id. at 1247.

Although the Arbitration Clause in this case does not specifically exclude any dispute between Global and PHCC's surety, the Court nonetheless determines that the express language of the Arbitration Clause restricts its application to disputes between PHCC and Global only.  In addition to the limiting language in the Arbitration Clause itself, the Global Agreement generally provides that it is effective "by and between Paul Howard Construction Co., Inc. (a North Carolina Corporation), hereinafter called 'Howard' and Global Egg Corp. (a New York Corporation), hereinafter called 'Global Egg.'" (Doc. # 42-1 at 1).  Thus, the Agreement does not contemplate that its terms should apply to any party other than PHCC and Global.

Furthermore, the Court acknowledges Global and Edgar's argument that, in order "to resolve any of the Plaintiff[s'] claims, whether in tort, contract, or civil theft, it is necessary to refer to and construe the provisions of the original Global Agreement." (Doc. # 19 at 5). However, the Court disagrees. USSC and USSIC's claims in this matter stem from (1) the alleged negligent or fraudulent misrepresentations made by Edgar in connection with the Settlement Agreement between Global and USSC, and (2) the unpermitted physical removal of dredging equipment allegedly belonging to USSC from the Project site. These claims do not arise from the terms of the Global Agreement between PHCC and Global.

Therefore, because Global and Edgar have provided no basis for binding either USSC or USSIC to the Arbitration Clause as a non-signatory, and because the Court finds that USSC and USSIC's claims fall outside the scope of the Arbitration Clause, the Court denies the Motion to Compel Arbitration as to Counts I, II, III, VI, VII, and VIII.

### B.   <u>Feasibility of Proceeding with Litigation</u>

"When confronted with litigants advancing both arbitrable and nonarbitrable claims, . . . courts have discretion to stay nonarbitrable claims." <u>Klay</u>, 389 F.3d at

1204.  "[C]ourts generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation."  Id.  "Crucial to this determination is whether arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision."  Id.

The Court finds that USSC and USSIC's claims of fraud in the inducement, negligent misrepresentation, rescission, personal liability, civil theft, and conversion are capable of resolution independent of the arbitrator's decision regarding PHCC's claims of breach of contract and indemnity relating to the Global Agreement.  Continuing forward with these non-arbitrable claims will not result in duplicative proceedings and will not permit a decision in either proceeding to have preclusive effect in the other. The determination as to whether Global breached the Global Agreement is inconsequential in determining whether Edgar and Global wrongfully removed equipment belonging to USSC from the Project site, or whether Edgar fraudulently or negligently misrepresented Global's corporate status in entering the Settlement Agreement with USSC.  Accordingly, the Court finds that it is feasible to proceed with this

litigation, and thus that a stay of the nonarbitrable claims in this matter is unnecessary.

**IV.  <u>Motion to Dismiss Claims Against Defendant Joseph Edgar</u>**

In addition to joining in Global's Motion to Compel Arbitration, Edgar has independently filed a Motion to Dismiss all claims within the Second Amended Complaint that Plaintiffs assert against Edgar individually.  (Doc. # 48). Although Edgar does not specify a procedural basis for dismissal, the Court construes the Motion as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In reviewing a motion to dismiss for failure to state a claim, a trial court accepts as true all factual allegations in the complaint and construes the facts in the light most favorable to the plaintiff.  <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004).  However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation."  <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

In <u>Bell Atlantic Corp. v. Twombly</u>, the Supreme Court articulated the standard by which claims should be evaluated on a motion to dismiss:

> While a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed factual
> allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action
> will not do.  Factual allegations must be enough to
> raise a right to relief above the speculative
> level.

550 U.S. 544, 555 (2007) (internal citations omitted).

In accordance with Twombly, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570).  A plausible claim for relief must include "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

Additionally, a pleading that contains an allegation of fraud is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

A.  **Fraud in the Inducement (Count I)**

Edgar first contends that Plaintiffs have failed to state a claim for fraud in the inducement.  To state a claim for fraud in the inducement, a plaintiff must allege (1) a misrepresentation of a material fact, (2) that the representor of the misrepresentation knew or should have known of the statement's falsity, (3) that the representor intended that the representation would induce another to rely and act on it, and (4) that the plaintiff suffered injury in justifiable reliance on the representation.  <u>Hillcrest Pac. Corp. v. Yamamura</u>, 727 So. 2d 1053, 1055 (Fla. 4th DCA 1999).

Edgar argues that, "[e]ven if we assume all of the allegations in the Plaintiffs' Complaint to be true, the Complaint fails to prove elements [three] and [four]." (Doc. # 48 at 6).  Specifically, Edgar contends (1) that the Second Amended Complaint contains "no statement that Edgar intended to make either PHCC, USSC, or USSIC enter into the settlement agreement," and (2) that there is "no allegation or link that the Plaintiffs relied upon the representation to the injury of the other party." (<u>Id.</u>).  In contrast, Plaintiffs assert that the Second Amended Complaint "alleges with particularity that Edgar . . . intended to induce USSC to enter into the Settlement Agreement and perform pursuant to its terms," and that "USSC and USSIC reasonably and detrimentally relied upon

these misrepresentations and omissions" in entering into the Settlement Agreement.  (Doc. # 51 at 15).  The Court agrees.

The Second Amended Complaint alleges (1) that Edgar "failed to disclose material facts to USSC," including the fact that "the State of New York had administratively dissolved Global as a corporation" (Doc. # 42 at ¶ 53); (2) that Edgar "understood that his misrepresentations were knowingly false when made to USSC" (Id. at ¶ 54); (3) that Edgar "intended for such material omissions of fact and material misrepresentations to induce USSC into agreeing to and executing the Settlement Agreement" (Id. at ¶ 56); and (4) that "USSC and USSIC have suffered damages as a result of Edgar's fraudulent inducement in the form of the payments made to Global and others under the Settlement Agreement." The Court finds that these particularized allegations satisfy the pleading requirements of Rule 9(b) with regard to Plaintiffs' claim for fraud in the inducement.  Edgar's Motion to Dismiss is thus denied as to Count I.

### B.  Negligent Misrepresentation (Count II)

To state a claim for negligent misrepresentation under Florida law, a plaintiff must allege:

(1) There was a misrepresentation of material fact;
(2) the represent[or] either knew of the misrepresentation, made the misrepresentation

> without knowledge of its truth or falsity, or
> should have known the representation was false; (3)
> the represent[or] intended to induce another to act
> on the misrepresentation; and (4) injury resulted
> to a party acting in justifiable reliance upon the
> misrepresentation.

Linville v. Ginn Real Estate Co., LLC, 697 F. Supp. 2d 1302,
1307 (M.D. Fla. 2010).  These elements are identical to the
elements of a claim for fraud in the inducement, "differing
only by the underlying facts supporting each claim."  Id. at
1308.  Expectedly, "Rule 9(b) applies to claims for negligent
misrepresentation under Florida law because negligent
misrepresentation 'sounds in fraud.'"  Id. at 1306.
Additionally, "[l]iability for negligent misrepresentation is
limited in the context of commercial transactions such that
the supplier of information is only liable if he manifests an
intent to deceive." Id. at 1307.

Just as the Court finds Plaintiffs' allegations
sufficient to state a claim for fraud in the inducement, the
Court finds the allegations sufficient to state a claim for
negligent misrepresentation. Plaintiffs have identified the
particular material fact allegedly misrepresented by Edgar,
have alleged that Edgar knew of the misrepresentation at the
time he made it, that Edgar's intent in making this
misrepresentation was to induce USSC to enter into the

Settlement Agreement, and that Plaintiffs have suffered injury in justifiably relying on Edgar's misrepresentations. These specific allegations are sufficient to satisfy the pleading requirements of Rule 9(b). Edgar's Motion to Dismiss is thus denied as to Count II.

### C.   Rescission (Count III)

"Although Florida's courts have muddied the waters by confusing the law of remedies with underlying causes of action, a claim for 'rescission' is well-recognized under Florida law." Ahern v. Fid. Nat'l Title Ins. Co., 664 F. Supp. 2d 1224, 1229 (M.D. Fla. 2009). The elements required to state a cause of action for rescission of contract are:

> (1) the character or relationship of the parties;
> (2) the making of a contract; (3) the existence of
> fraud, mutual mistake, false representations,
> impossibility of performance, or other ground for
> rescission or cancellation; (4) that the party
> seeking rescission has rescinded the contract and
> notified the other party to the contract of such
> rescission[;] (5) [i]f the moving party has
> received benefits from the contract, he should
> further allege an offer to restore these benefits
> to the party furnishing them, if restoration is
> possible[;] [and] (6) [l]astly, that the moving
> party has no adequate remedy at law.

Staaldam Beheer B.V. v. ASAP Installations, LLC, No. 8:09-cv-2226-T-17EAJ, 2010 WL 1730780, at *4 (M.D. Fla. Apr. 28, 2010) (citing Ahern, 664 F. Supp. 2d at 1229).

Edgar argues that the Plaintiffs are "trying to rescind the contract between Edgar and PHCC which never existed[,] is not alleged[,] and is not attached to any of the pleadings or exhibits." (Doc. # 48 at 8). Furthermore, Edgar maintains that none of the elements of rescission are met because "[t]here is no relationship between Joseph Edgar and any of the Plaintiffs. There is no contract. No existence of fraud, only that the corporation was dissolved. If there was no contract, then none can be rescinded." (Id. at 9).

These arguments distort the allegations of the Second Amended Complaint. Rather than averring that some unidentified contract between PHCC and Edgar existed which Plaintiffs now seek to rescind, Plaintiffs allege the following:

> To the extent that the Court finds that the Settlement Agreement is not a nullity, it was executed by Global on August 27, 2012. However, the Settlement Agreement only came into existence because of Edgar's misrepresentations and material omissions concerning Global's existence and its capacity to contract, along with his willingness to improperly execute the Agreement as Global's president. Because of the manner in which it came into existence, the Settlement Agreement should be rescinded. USSC has notified Global and Edgar of the rescission of the Settlement Agreement and the grounds for rescission. USSC and USSIC have received no benefit from the Settlement Agreement, and even if it had, it would be impossible to return those benefits to Edgar and Global. USSC and USSIC have no adequate remedy at law.

25

(Doc. # 42 at ¶¶ 72-77).

The Second Amended Complaint thus alleges that the Settlement Agreement itself is the subject of the attempted rescission, and that Edgar's relationship to the Settlement Agreement is that of an individual officer of a corporation who allegedly executed the Settlement Agreement on behalf of a corporation which Edgar represented as active when it was in fact dissolved.

The Court finds these allegations, coupled with the extensive factual summary included within the Second Amended Complaint, sufficient to survive Edgar's Motion to Dismiss. To the extent Edgar challenges the appropriateness of his individual liability for this alleged basis for rescission, that issue is discussed more fully below.  At this juncture, the Court finds that the absence of a contract between Edgar personally and any Plaintiff in this action is not fatal to Plaintiffs' alleged cause of action for rescission.  The Court thus denies Edgar's Motion to Dismiss as to Count III.

D.   **Personal Liability (Count VI)**

Edgar argues in his Motion to Dismiss that Plaintiffs' cause of action for "personal liability" amounts to an attempt "to pierce the corporate veil citing the fact that Global was

26

administratively dissolved on the day it entered into a settlement agreement with PHCC," and that "there is no legal claim against the corporation rising to the level of piercing the corporate veil." (Doc. # 48 at 9). Edgar proceeds to enumerate the elements of proof required by Florida law in order to pierce the corporate veil. However, Edgar neglects to supply the Court with legal authority applying the appropriate standard -- that which is applicable to a motion to dismiss. Furthermore, Edgar offers no explanation for his presumed application of Florida law.

In opposing Edgar's Motion to Dismiss Count VI of the Second Amended Complaint, Plaintiffs premise Edgar's personal liability on New York law. Specifically, Plaintiffs argue that, "[u]nder New York law, an administratively dissolved corporation may not conduct new business -- it must only 'wind down.' N.Y. Bus. Corp. § 1005(a)." (Doc. # 51 at 17). Furthermore, according to Plaintiffs, "a person who 'purports to act on behalf of a dissolved corporation which has neither a de jure nor a de facto existence . . . is therefore personally responsible for the obligations which he incurred.'" (Id.) (quoting Brandes Meat Corp. v. Cromer, 146 A.D. 2d 666, 667 (N.Y. App. Div. 1989)). Plaintiffs thus argue that, on this basis, Edgar should be held personally

liable for any damages arising from the Settlement Agreement, as he "knowingly procured new business on behalf of a dissolved corporation." (Id.).

"The law of the state of incorporation ordinarily governs the legal effect of a corporation's dissolution, including the questions of the corporation's status, rights, and liabilities." Hood Bros. Partners, L.P. v. USCO Distrib. Servs., Inc., 140 F.3d 1386, 1388 n.1 (11th Cir. 1998). Accordingly, absent any express explanation from either party regarding the choice of law analysis in this matter,[2] the Court finds for the purpose of resolving the instant Motion to Dismiss that New York law governs the determination of Edgar's personal liability in the context of Global's alleged dissolution because Global was incorporated in New York.

Plaintiffs have alleged that Edgar improperly acted on behalf of a dissolved corporation. (Doc. # 42 at ¶¶ 92-95). More specifically, Plaintiffs allege that Edgar made inappropriate use of Global's corporate form when he "improperly used Global, Global's corporate identity, and

---

[2] The Court notes that, with the exception of the personal liability and corporate dissolution issues, the parties do not dispute the application of Florida law to all disputes within the instant Motions. This includes the issue of arbitrability as well as the claims stated against Edgar in Counts I, II, III, VII, and VIII.

Global's misrepresented corporate status to transact new business." (Id. at ¶ 93).

The Court thus finds that Plaintiffs have alleged sufficient facts to raise a right to relief against Edgar as an individual above the speculative level, and to provide Edgar with adequate notice of Plaintiffs' claims against him. Edgar will have an opportunity later in the proceedings to challenge the appropriateness of individual liability under the circumstances of this case, if he so chooses.

### E. Civil Theft (Count VII)

"To state a claim for civil theft under Florida law, [a plaintiff] must allege an injury resulting from a violation by [the defendant] of the criminal theft statute, Fla. Stat. § 812.014." United Tech. Corp. v. Mazer, 556 F.3d 1260, 1270 (11th Cir. 2009). "To do this, [the plaintiff] must allege that [the defendant] (1) knowingly (2) obtained or used, or endeavored to obtain or use [the plaintiff's] property with (3) 'felonious intent' (4) either temporarily or permanently to (a) deprive [the plaintiff] of its right to benefit from the property or (b) appropriate the property to [the defendant's] own use or to the use of any person not entitled to the property." Id. (citing Fla. Stat. §§ 772.11, 812.14(1)).

Edgar contends that Plaintiffs' claim for civil theft against Edgar must fail because Plaintiffs "have failed to demonstrate that any of the Plaintiffs had any legally recognized property interest in the items stolen." (Doc. # 48 at 13). To support this argument, Edgar cites Sussex Mutual Insurance Co. v. Sabor, 568 So. 2d 1004 (Fla. 3d DCA 1990), in which the appellate court found that a civil theft count had been properly dismissed with prejudice by the trial court "because it fail[ed] to allege, and could not in good faith allege, that the plaintiff had a property interest in the 'book of business' allegedly stolen by the defendants." Id. at 1005. The Court finds Sussex inapposite to the present case, as Plaintiffs have indeed alleged that USSC "owns [the relevant] equipment items and possesses the Bill of Sale for them." (Doc. # 42 at 18).

Furthermore, to the extent Edgar argues that the civil theft count must fail because Plaintiffs have failed to provide evidentiary support for their property interest in the items allegedly stolen, Edgar has provided no authority requiring such a showing at the motion to dismiss stage. At this juncture, Plaintiffs do not bear a burden to "prove" the elements of their claims against Edgar. Rather, to survive a motion to dismiss, Plaintiffs need only allege facts

30

sufficient to raise a right to relief above the speculative level. See, e.g., Anthony Distrib., Inc. v. Miller Brewing Co., 941 F. Supp. 1567, 1575 (M.D. Fla. 1996) (acknowledging that a count "may validly state a claim for civil theft," so as to survive a motion to dismiss, but explaining that the count must be "supported by sufficient record evidence" to survive the summary judgment stage).

Thus, because Plaintiffs have alleged: (1) that Edgar "knowingly, and without proper authority, removed the dredge and other equipment purchased from S.W. Cattle from the Project site"; (2) that "USSC owns these equipment items and possesses the Bill of Sale for them"; and (3) that "Edgar intended to permanently deprive USSC of its rights to the dredge and other equipment purchased from S.W. Cattle"; the Court finds Plaintiffs have sufficiently stated a claim for civil theft.  Edgar's Motion to Dismiss is accordingly denied as to Count VII.  (Doc. # 42 at 18).

### F.  Conversion (Count VIII)

"Conversion is an 'act of dominion wrongfully asserted over another's property inconsistent with his ownership therein.'"  United Tech. Corp., 556 F.3d at 1270 (quoting Thomas v. Hertz Corp., 890 So. 2d 448, 449 (Fla. 3d DCA 2004)).  "The tort 'may occur where a person wrongfully

refuses to relinquish property to which another has the right of possession,' and it 'may be established despite evidence that the defendant took or retained property based upon the mistaken belief that he had a right to possession, since malice is not an essential element of the action.'" Id. (quoting Seymour v. Adams, 638 So. 2d 1044, 1047 (Fla. 5th DCA 1994)).  Accordingly, to state a claim for conversion under Florida law, "[a] plaintiff must allege he has the right of possession in the property allegedly converted." Sirpal v. Univ. of Miami, 684 F. Supp. 2d 1349, 1363 (S.D. Fla. 2010).

Edgar argues that the Second Amended Complaint "does not show anywhere any ownership of the equipment of the materials alleged."  (Doc. # 48 at 14).  However, a review of the operative Complaint reveals that Plaintiffs allege, under the subheading "Count VIII – Conversion," that "USSC has an ownership interest in and is entitled to possess the dredge and other equipment purchased from S.W. Cattle."  (Doc. # 42 at 19-20).  Furthermore, Plaintiffs allege that "[b]y removing the dredge and other equipment . . . from the Project site, Edgar has wrongfully deprived USSC of its ownership interest and its right to use or benefit from the property." (Id. at 20).

The Court finds these allegations sufficient to state a claim for conversion and accordingly denies Edgar's Motion to Dismiss as to Count VIII. Once more, the Court notes that Plaintiffs' claims are reviewed at this juncture through the lens of a motion to dismiss; Edgar will have another opportunity to contest the ownership or right of possession of the relevant equipment during the summary judgment stage.

## V. Conclusion

The Court grants Joseph Edgar and Global Egg Corp.'s Motion to Compel Arbitration and Stay Proceedings (Doc. # 49) to the extent that Counts IV and V of the Second Amended Complaint are compelled to arbitration. The Motion is otherwise denied. Furthermore, the Court denies Edgar's individual Motion to Dismiss Claims Against Defendant Joseph Edgar, Individually (Doc. # 48).

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendants' Motion to Compel Arbitration and Stay Proceedings (Doc. # 49) is **GRANTED in part** and **DENIED in part** as detailed herein.

(2) Defendant Joseph Edgar's Motion to Dismiss Claims against Defendant Joseph Edgar, Individually (Doc. # 48) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>5th</u> day of December, 2013.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record