UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES SURETY COMPANY,
PAUL HOWARD CONSTRUCTION
COMPANY, and UNITED STATES
SPECIALTY INSURANCE COMPANY,

      Plaintiffs,

v.                   Case No. 8:13-cv-1207-T-33-TGW

JOSEPH EDGAR and GLOBAL EGG
CORP.,

      Defendants.

_____/

GLOBAL EGG CORP. and JOSEPH
EDGAR,

      Counter-Claimants,

v.

PAUL HOWARD CONSTRUCTION
COMPANY, UNITED STATES
SPECIALTY INSURANCE COMPANY,
and UNITED STATES SURETY
COMPANY,

      Counter-Defendants.

_____/

## ORDER

    This matter comes before the Court in consideration of

Plaintiffs United States Surety Company (USSC), United States

Specialty Insurance Company (USSIC), and Paul Howard

Construction Company's (PHCC) Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss (Doc. # 57), filed on February 12, 2014.  Defendants Global Egg Corp. (Global) and Joseph Edgar filed a response in opposition to the Motion (Doc. # 59) on February 26, 2014.  Plaintiffs USSC, USSIC and PHCC filed a reply (Doc. # 62), with leave of Court, on March 11, 2014. For the reasons that follow, the Motion is granted in part and denied in part.

## I.   __Factual Background__

USSIC is a surety company that issues performance and payment bonds for public and private projects. (Doc. # 42 at 2).  USSC "is a sister company to [USSIC]" that, in addition to issuing performance and payment bonds for public and private projects, "administers claims made against USSIC bonds." (Id.). PHCC is a "marine and dredging construction" company. (Id.). Global is a dissolved New York corporation and former contractor specializing in dredging activities. (Id.).  Joseph Edgar is an individual who formerly served as the president of Global.  (Id.).

In 2008, the Jacksonville District of the U.S. Army Corps of Engineers issued plans for the construction of an aquatic ecosystem restoration project (the Project) in Clearwater, Florida, which required substantial dredging.  (Id. at 3).

On August 17, 2009, the Corps awarded the contract for completion of the Project work to non-party SEEK Enterprises. (Id.).   SEEK subsequently failed to timely perform its obligations under the contract, and the Corps consequently terminated SEEK for default in February of 2011.  (Id.).

Following SEEK's termination, PHCC took over completion of the Project for the Corps; to do so, PHCC obtained a performance bond for the Project from USSC in the penal amount of $4,210,972.00.  (Id.).  In March of 2011, PHCC entered into an agreement with Global (the Global Agreement) for the performance of the work required to complete the Project. (Id.).

In accordance with the Global Agreement, Global agreed to provide equipment and manpower to perform dredging and other work required for the Project.  (Id. at 4).  The Global Agreement additionally contained an Arbitration Clause which provided, in relevant part:

> All claims, disputes and other matters in question between GLOBAL EGG and HOWARD arising out of, or relating to, this Agreement or the breach thereof . . . shall be decided by arbitration in accordance with the Arbitration Rules of the American Arbitration Association then pertaining unless the parties mutually agree otherwise.

(Doc. # 42-1 at 2).

3

In August of 2011, PHCC and Global entered into a Purchase Order Agreement which required Global to furnish equipment to the Project site in exchange for payments from PHCC totaling $1,050,000.00. (Doc. # 42 at 4). This equipment specifically included a dredge, fuel barge, boats, boosters, and transfer pumps, among other items. (Id.).

During the course of the work on the Project site, Global fell behind on payments owed to its equipment vendor pursuant to a "rental/purchase agreement" for the dredge and related equipment (id.), and the vendor brought a replevin action against Global in federal court seeking return of the dredge. See Southwest Cattle Co., LLC v. Global Egg Corp., Case No. 8:12-cv-803-T35-TGW. On June 28, 2012, Global advised the court in its dispute with the equipment vendor that its corporate charter had lapsed, but Global "represented that it was in the process of reinstating its corporate status with the state of New York." (Doc. # 42 at 4).

In the summer of 2012, the Corps issued (1) a stop work order for the Project and (2) a default notice to PHCC. (Id. at 5). Based on its perception that PHCC and Global had failed to make sufficient dredging progress, the Corps threatened PHCC with termination. (Id.). Shortly thereafter, on August 23, 2012, Global notified PHCC that it considered

4

PHCC in breach of the Global Agreement due to PHCC's alleged failure to make certain payments required by the Purchase Order Agreement. (Id.). Global notified PHCC that, as a result, Global intended to terminate the Global Agreement. (Id.). In the alternative, Global stated that it would continue working on the Project under the contract, provided it had use of the dredge or a suitable substitute, in order to give PHCC an opportunity to cure the alleged contract breaches. (Id.). Global additionally asserted a claim against PHCC's payment bond for the allegedly unpaid amounts due. (Id.).

In an effort to avoid an interruption in work on the Project that would likely result in termination of PHCC's contract with the Corps, USSC contacted Global on USSIC's behalf in August of 2012 in an effort to settle Global's disputes with PHCC and with Global's equipment vendor. (Id. at 6). On August 27, 2012, USSC and Global entered into a Settlement Agreement concerning Global's dispute with PHCC, pursuant to which USSC agreed to provide a total of $500,000.00 in funds through USSIC for or on behalf of Global. (Id.). The Settlement Agreement further provided for a direct payment of $267,917.00 to Global as well as a payment of over $150,000.00 to Global's equipment vendor for the purchase of

a dredge and other related equipment. (Id.). Defendant Joseph Edgar executed the Settlement Agreement as "president" of Global. (Id.).

Despite these settlement efforts, the Corps terminated PHCC's contract for the Project on November 2, 2012, allegedly due to Global's failure to make sufficient progress. (Id. at 7). On November 7, 2012, the Corps notified USSC that it would look to the surety for completion of the work, including costs of re-procurement and the assessment of liquidated damages. (Id.). The Corps also advised USSC that it should take responsive action to fulfill its obligations under the performance bond. (Id. at 7-8).

In response to the notice from the Corps, USSC began "devising plans for the takeover and performance of the remaining work." (Id. at 8). On November 9, 2012, "Edgar and Global expressed dissatisfaction with the options USSC was considering to complete the remaining Project work." (Id.). As a result, Edgar "notified USSC that he intended to 'be in Florida early next week to secure [his] equipment,'" and additionally wished USSC "the best of luck" regarding the remaining Project work. (Id.). USSC claims that, subsequent to this notification, Global began disconnecting equipment at the Project site, which led USSC to believe that Global

6

intended to remove its equipment in violation of the Settlement Agreement.  (Id. at 8-9).

Acting on this assumption, USSC initiated a separate federal action, United States Surety Company v. Global Egg Corp., Case No. 8:12-cv-2574-T-33-EAJ, obtained a temporary restraining order, and attempted to obtain a preliminary injunction against Global.  (Id. at 9).  Global maintained, however, that it had no intention of moving the equipment off site.  (Id.).  In November of 2012, during the course of that litigation, USSC discovered that Global had been dissolved as a corporation by the state of New York due to "repeated violations of New York Tax Law § 203-a."  (Id.; Doc. # 42-14 at 1).  Global subsequently confirmed in response to USSC's motion for preliminary injunction that in April of 2012, "the New York State Corporations Department dissolved Global Egg by proclamation for back taxes."  (Doc. # 42-11 at 11 n.6).  On January 2, 2013, Magistrate Judge Elizabeth A. Jenkins issued a report and recommendation recommending that USSC's motion for preliminary injunction be denied.  (Doc. # 42 at 10).

Plaintiffs claim that, "[w]ithin days of the issuance of this Court's Report and Recommendation, and without USSC's knowledge or consent, Edgar and others returned to the secure

Project site and removed several pieces of equipment," and that "Global's removal efforts increased significantly on or about January 12, 2013, when Edgar and others removed the dredge and other equipment from the Project site, again, without USSC's knowledge or consent." (Doc. # 42 at 10).

On January 15, 2013, allegedly "unaware of Edgar's efforts to remove equipment from the Project site, USSC informed Global that it considered the August 27, 2012, Settlement Agreement to be 'void and rescinded' based upon Global's misrepresentations and omissions of fact as to Global's corporate status." (Id.). USSC also advised Global that it considered "all dredging equipment and machinery purchased as part of the S.W. Cattle sale . . . to be USSC's property." (Id. at 11; Doc. # 42-14 at 1).

On January 17, 2013, USSC discovered that Edgar had removed the dredge and other equipment from the Project site. (Doc. # 42 at 11). Accordingly, on January 18, 2013, USSC made a written civil theft demand on Global and Edgar under section 772.11(1), Florida Statutes, "for the treble damage amount of $471,000 due to Global's and Edgar's removal of the dredge and related equipment items purchased from S.W. Cattle." (Id.; Doc. # 42-15 at 1).

Plaintiffs claim that, as of May 2, 2013, neither Global nor Edgar had responded to USSC's civil theft demand letter. (Doc. # 42 at 11).  Additionally, Plaintiffs allege that Global and Edgar have "failed to pay certain vendors for equipment rentals used in conjunction with the Project, thereby resulting in claims against USSC's payment bond." (Id.).

## II.  Procedural History

USSC and PHCC initiated this action against Edgar and Global on May 7, 2013, by filing an eight-count Complaint. (Doc. # 1).  Specifically, the Complaint alleged counts of (1) fraud in the inducement (against Edgar); (2) negligent misrepresentation (against Edgar); (3) rescission (against Edgar and Global); (4) breach of contract (against Global); (5) indemnity (against Global); (6) personal liability (against Edgar); (7) civil theft (against Edgar and Global); and (8) conversion (against Edgar).  Rather than asserting each claim on behalf of both Plaintiffs, the Complaint specified that PHCC independently asserted Counts IV and V, whereas USSC independently asserted the remaining six counts.

On August 21, 2013, USSC and PHCC filed an Amended Complaint in response to a Court Order concerning defective jurisdictional allegations.  (Doc. # 29).  The Amended

Complaint contained the same eight counts as the original Complaint.

On October 9, 2013, with leave of Court, USSC and PHCC filed a Second Amended Complaint. (Doc. # 42). Although the Second Amended Complaint also contains the same eight counts as the original complaint, it includes an additional Plaintiff: USSIC. (Id.). Furthermore, the Second Amended Complaint reflects that USSC and USSIC jointly assert Counts I, II, III, and VI, PHCC independently asserts Counts IV and V, and USSC alone asserts Counts VII and VIII.

On October 23, 2013, Edgar filed a motion entitled "Motion to Dismiss Claims against Defendant Joseph Edgar, Individually." (Doc. # 48). On that same date, Global joined Edgar in filing a motion to compel arbitration and stay proceedings. (Doc. # 49). On December 5, 2013, the Court entered an Order granting Edgar and Global Egg's Motion to Compel Arbitration and Stay Proceedings to the extent that Counts IV and V of the Second Amended Complaint were compelled to arbitration. (Doc. # 52). Furthermore, within that Order the Court denied Edgar's individual motion to dismiss.

On December 18, 2013, Global[1] filed a Counterclaim against USSC, USSIC and PHCC, alleging four distinct causes of action: (1) claims under the Miller Act payment bond pursuant to 40 U.S.C. § 3133, (2) breach of contract, (3) quantum meruit, and (4) conversion. (Doc. # 54). Although Global had originally filed the Counterclaim as a separate action on November 6, 2013, Case No. 8:13-cv-2844-T-33-TBM, Global ultimately filed, on March 14, 2014, a motion to consolidate the separate action with his counterclaim in the present case. (Doc. # 64). In so moving, Global represented that the separate action and the present Counterclaim contained "identical claims." (Doc. # 64 at 2; Doc. # 66 at 2). The Court granted Global's motion to consolidate cases on April 8, 2014. (Doc. # 67). Thus, for purposes of this Order, the Court refers only to the Counterclaim asserted on December 18, 2013. (Doc. # 54).

---

[1] The text of the Counterclaim provides that "Global Egg Corporation, Counterclaimant, hereby submits this counterclaim against Plaintiffs . . . ." (Doc. # 54 at 1). However, the document was filed on the record as a "Counterclaim against All Plaintiffs filed by *All Defendants*" (emphasis added), and thus the docket lists both Global and Edgar as "Counter-Claimants." The Court additionally notes that the response in opposition to the present Motion to Dismiss is asserted on behalf of both Edgar and Global Egg. (Doc. # 59 at 1). However, consistent with the plain language of the Counterclaim itself, the Court will construe the Counterclaim to be asserted by Global only.

On February 12, 2014, USSC, USSIC and PHCC filed the instant Motion to Dismiss Global's Counterclaim, arguing that the "Court should dismiss Counts I through III" because "none of those counts sufficiently state a claim upon which relief [can] be granted." (Doc. # 57 at 2).   Edgar and Global filed a response in opposition to the Motion (Doc. # 59) on February 26, 2014.   USSC, USSIC and PHCC filed a reply (Doc. # 62), with leave of Court, on March 11, 2014.

The Court has carefully reviewed the Motion, the response, as well as the reply, and is otherwise fully advised in the premises.

III. **Motion to Dismiss**

    A.   **Legal Standard**

In reviewing a motion to dismiss for failure to state a claim, a trial court accepts as true all factual allegations in the complaint and construes the facts in the light most favorable to the plaintiff.   Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004).   However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In <u>Bell Atlantic Corp. v. Twombly</u>, the Supreme Court articulated the standard by which claims should be evaluated on a motion to dismiss:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. 544, 555 (2007) (internal citations omitted).

In accordance with <u>Twombly</u>, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570). A plausible claim for relief must include "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

**B.    <u>Miller Act</u>**

Global Egg asserts its Counterclaim under 40 U.S.C. § 3133. That section provides, in relevant part:

> In general. -- Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on

> which the person did or performed the last of the
> labor or furnished or supplied the material for
> which the claim is made may bring a civil action on
> the payment bond for the amount unpaid at the time
> the civil action is brought and may prosecute the
> action to final execution and judgment for the
> amount due.

40 U.S.C. § 3133(b)(1).

"The Miller Act requires contractors to post bond to ensure payment of persons supplying labor or materials on any government construction contract exceeding $100,000.00." U.S. ex rel. Capital Computer Grp., LLC v. Gray Ins. Co., 453 F. App'x 905, 906 (11th Cir. 2011) (citing 40 U.S.C. § 3131(b)(2)). "Because federally owned property is exempt from liens that normally protect laborers and suppliers from non-payment, the Miller Act was enacted to provide a substitute remedy." Id. "The Miller Act is to be liberally construed to carry out its remedial purpose." Id. at 908.

"The Miller Act by its terms covers 'every person that has furnished labor or material' for the project." Id. (quoting 40 U.S.C. § 3133(b)(1)). "The right of action to sue on the bond, however, extends only to the subcontracting and sub-subcontracting level." Id. "There is no right of action for those further down the contracting chain." Id.

USSC, USSIC and PHCC argue that Count I of the Counterclaim asserting a claim under the Miller Act "fails

because the Global Agreement sufficiently establishes Global as a joint venture partner with PHCC.  Therefore, Global is not a proper Miller Act bond claimant." (Doc. # 57).  In response, Global contends:

> The elements of a Miller Act Claim are clearly set forth in the counterclaim . . . : Paragraph 22 states that USSIC and USSC are obligated pursuant to the Payment Bond to pay Global for labor, materials, equipment rentals, etc., in execution of the work provided for the relevant Project. Paragraphs 19 and 20 set forth that as of the date of this action, Global was owed by PHCC and USSC $265,144 for daily operating expenses for fuel, supplies, boat operations, construction materials and demobilization costs.  In addition, Global was prevented from removing materials, valued at $90,000, for a total amount owed of $355,144.

(Doc. # 59 at 3).

In arguing that the existence of a purported "joint venture relationship" precludes Global from asserting a claim under the Miller Act, the Plaintiffs provide no binding authority.  Instead, they cite to United States ex rel. Briggs v. Grubb, 358 F.2d 508, 512 (9th Cir. 1966), for the principle that "any partner or joint adventurer of the principal is not a proper Miller Act payment bond claimant." (Doc. # 57 at 8).  In Briggs, however, the Ninth Circuit explained that the district court determined the legal status of the appellant to be that of a "joint venturer" only after hearing testimony at trial and reviewing counsel's proposed findings of fact

15

and conclusions of law.  _Id._ at 511-12.  Thus, although the Ninth Circuit ultimately articulated the principle that, "[w]hile a Miller Act payment bond does make the surety liable for labor and materials furnished by a subcontractor when the contractor under the bond defaults, such a bond does not make the surety liable for monies expended on the contract by a partner or joint venturer of the contractor under the bond," such a finding would be improperly applied as a basis to grant the present Motion to Dismiss.  _Id._ at 512.

In this case, although the Court has reviewed the relevant agreements, the Court has not yet had the opportunity to review additional evidence relating to "the conduct of the parties that followed those agreements," as did the district court in _Briggs_.[2]  _Id._  The Court accordingly declines Plaintiffs' invitation to make a conclusive finding as to

---

[2] The Court notes that Plaintiffs also cite _St. Paul Mercury Indem. Co. v. United States ex rel. Jones_, 238 F.2d 917, 921-22 (10th Cir. 1956) and _American Cas. Co. of Reading, Pa. v. Assiram_, 289 F. Supp. 645, 646 (D. Mass. 1968), to support their argument that a joint venturer of the principal is not a proper Miller Act claimant.  However, the Court remains unpersuaded that either of these cases supports dismissal at this juncture of the proceedings rather than deferring this determination until such a time as the Court has had the opportunity to review all relevant evidence.  _See Jones_, 238 F.2d at 921 ("The true relationship must be determined by the conduct of the parties, together with all the other material facts and circumstances.").

Global's status as a "joint venturer" at this stage of the proceedings.  The Court thus denies the Motion to Dismiss as to Count I of the Counterclaim.

### C.   Breach of Contract

Count II of Global's Counterclaim generally asserts a claim for breach of contract against USSC, USSIC and PHCC. "An adequately pled breach of contract action requires three elements: (1) a valid contract; (2) a material breach; and (3) damages." Friedman v. N.Y. Life Ins. Co., 985 So. 2d 56, 58 (Fla. 4th DCA 2008).

USSC, USSIC and PHCC argue that Global's claim for breach of contract "fails to allege a claim upon which the Court can grant relief for three reasons." (Doc. # 57 at 11).  First, Plaintiffs contend "it appears that Global generally states that all [Plaintiffs] have breached all contracts, regardless of whether the agreements actually bind the individual [Plaintiffs]."  (Id.) (emphasis in original).  Thus, Plaintiffs claim that this count "fails to put each [Plaintiff] on notice as to (i) which agreement it purportedly is party to; (ii) its breach of that applicable agreement; and (ii[i]) what damages result from the alleged breach." (Id.).

Furthermore, USSC, USSIC and PHCC argue that "Global failed to allege that it is due any amount for damages under the Settlement Agreement." (Id. at 12).  Instead, according to Plaintiffs, "Global's prayer for damages directly relates to and concerns its purported Miller Act payment bond claim," which amount "solely relates to the Global Agreement, not the Settlement Agreement." (Id.).

Lastly, Plaintiffs argue that, "to the extent that Global has sufficiently alleged that PHCC breached the Global Agreement, such claims are subject to arbitration." (Id.). Indeed, Global and Edgar previously filed a motion to compel arbitration as to "each of the eight counts in the plaintiff[s'] complaint" (Doc. # 49 at 6), relying on the Arbitration Clause within the Global Agreement.  In response to that motion, USSC, USSIC and PHCC conceded that two of the eight counts in their Second Amended Complaint, specifically PHCC's claims against Global for breach of contract and indemnity, should be compelled to arbitration. (Doc. # 50 at 2).

In response to the present Motion, Global confusingly argues that "the complaint set forth by USSC and USSIC sets forth eight (8) different counts against Global and Edgar regarding the same project, including breach of contract,

without actually having the benefit of being party to a single document between Global or Edgar.   Yet, this Court found reasonable inferences were stated." (Doc. # 59 at 4).   The Court finds this to be an inaccurate characterization of the current state of this litigation.   Not only did the Court's December 5, 2013, Order compel to arbitration Counts IV and V of the Second Amended Complaint for breach of contract and indemnity, such that those claims are no longer properly before the Court (See Doc. # 52 at 33), but at no time were those claims asserted on behalf of USSC and USSIC as Global now asserts in response to the Motion to Dismiss.   Rather, Counts IV and V were asserted in the Second Amended Complaint exclusively by PHCC.   (Doc. # 42 at 16).

In light of Global's previous position that "the parties clearly provided that any disputes or claims should be settled in arbitration as per . . . the Global Agreement" (Doc. # 49 at 4), as well as the Court's previous Order compelling to arbitration PHCC's claims against Global for breach of contract and indemnity under the Global Agreement, the Court finds Global's vague assertion of a breach-of-contract claim against all three Plaintiffs to be insufficient to withstand the present Motion to Dismiss.   Global has not alleged what actions on behalf of which parties constituted a breach of

which one of the two relevant contracts in this matter. Additionally adding to the confusion, as previously noted, is Global's failure to acknowledge in response to the Motion to Dismiss that PHCC's claims against Global for breach of contract and indemnity have been compelled to arbitration.

Indeed, the Court specifically provided in its December 5, 2013, Order granting in part Global's motion to compel arbitration that the non-arbitrable claims remaining after compelling Counts IV and V to arbitration included "USSC and USSIC's claims of fraud in the inducement, negligent misrepresentation, rescission, personal liability, civil theft, and conversion." (Doc. # 52 at 18). The Court further explained that these remaining claims "are capable of resolution independent of the arbitrator's decision regarding PHCC's claims of breach of contract and indemnity," and thus that "it is feasible to proceed with this litigation, and . . . a stay of the non-arbitrable claims in this matter is unnecessary." (Id. at 18-19).

Despite the Court's extensive discussion regarding which claims could feasibly proceed in this litigation without resulting in duplicative proceedings or permitting a decision in either proceeding to have a preclusive effect in the other, and despite Plaintiffs' specific argument that "to the extent

that Global has sufficiently alleged that PHCC breached the Global Agreement, such claims are subject to arbitration" (Doc. # 57 at 12), Global neglected to address the issue of arbitrability whatsoever in response to the present Motion to Dismiss.  The Court thus grants the Motion to Dismiss as to Count II of the Counterclaim and dismisses Global's breach-of-contract claim without prejudice.  However, the Court will permit Global one additional opportunity to state a claim for breach of contract that properly alleges what actions on behalf of which Plaintiffs constituted a breach of which contract, as well as how that breach resulted in damages to Global, to the extent such a claim may be possible.

The Court notes that it affords this opportunity to Global despite the fact that the deadline to add parties or amend the pleadings in this matter expired on March 10, 2014. (See Doc. # 36 at 1).  However, in light of the procedural history of this case, the Court finds it appropriate to permit Global leave to amend the Counterclaim to cure the deficiencies discussed herein.  If Global intends to file an amended counterclaim, Global must do so on or before May 2, 2014.

     D.   **<u>Quantum Meruit</u>**

Global alleges in its Counterclaim for quantum meruit that "Global provided valuable equipment and services in furtherance of the agreement with PHCC, and still has materials on the job site," and that "USSC, USSIC, and PHCC benefitted from Global's supply of equipment, services, materials, and labor," but have "failed to pay Global for services, materials, and equipment performed in connection with the Project." (Doc. # 54 at 6-7).

Although Global has labeled Count III of the Counterclaim as "Quantum Meruit," Global nonetheless states "the elements of an *unjust enrichment* claim" in its response to the present Motion to Dismiss. (Doc. # 59 at 5) (emphasis added). Although these claims may at times share elements of proof, they arise under distinct causes of action. See Tooltrend, Inc. v. CMT Utensili, SRL, 198 F.3d 802, 805-06 (11th Cir. 1999) (contrasting the theories of quantum meruit and unjust enrichment under Florida law).

"Under Florida law, the elements of a cause of action for unjust enrichment are: 1.) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; 2.) the defendant voluntarily accepts and retains the benefit conferred; and 3.) the circumstances are such that it would be inequitable for the defendant to retain the benefit without

paying for it." <u>Shibata v. Lim</u>, 133 F. Supp. 2d 1311, 1316 (M.D. Fla. 2000).

"By contrast, the remedy of quantum meruit derives from contracts 'implied in fact.'" <u>Tooltrend</u>, 198 F.3d at 806. "In these contracts, the parties have in fact entered into an agreement but without 'sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement . . . [in order to give] the effect which the parties . . . presumably would have agreed upon if, having in mind the possibility of the situation which has arisen, they had contracted expressly thereto.'" <u>Id.</u> (quoting <u>Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.</u>, 695 So. 2d 383, 385-86 (Fla. 4th DCA 1997)).

USSC, USSIC and PHCC argue that Global's quantum meruit claim should fail "because Global alleged an express agreement numerous times," and "[u]nder Florida law, recovery under a contract implied in law is only proper if an express contract does not exist." (Doc. # 62 at 5). In Global's response in opposition to the Motion to Dismiss, Global fails to address the Plaintiffs' argument that Global's acknowledgement of an express agreement prevents Global from simultaneously asserting a quantum meruit claim. Instead,

Global argues merely that the elements of quantum meruit have been properly alleged, and that "a reasonable argument can be made that the [Plaintiffs] have been unjustly enriched by failing to pay for services and materials provided by Global." (Doc. # 59 at 5).

The Court finds that the insufficiencies discussed in reference to Global's breach-of-contract count similarly plague Global's claim for quantum meruit. Global does not allege in the Counterclaim that it entered into an agreement with any of the Plaintiffs which lacked "'sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement," such as might support a claim for quantum meruit under Florida law. Tooltrend, 198 F.3d at 806; see also Donner v. Fla. Bracing Ctr., Inc., No. 13-60848-CIV, 2013 WL 3189077, at *3 (S.D. Fla. June 20, 2013). Indeed, Global does not argue that it intended to allege such facts, but rather provides the elements for an altogether different cause of action in response to the present Motion. Additionally, as discussed above, Global has not addressed in response to the Motion whether this claim is properly before the Court at this juncture, given the Court's previous Order designating arbitrable and non-arbitrable claims. The Court thus grants

24

Plaintiffs' Motion to Dismiss as to Count III of the Counterclaim, but permits Global to reassert this claim, if possible, in an amended counterclaim to be filed on or before May 2, 2014.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Counter-Defendants' Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss (Doc. # 57) is **GRANTED** in part and **DENIED** in part.

(2) Global may file an amended counterclaim on or before May 2, 2014.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 25th day of April, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record